IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BIN WANG, | : | CIVIL ACTION |
| | : | NO. 19-357 |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL OVERMYER, et al., | : | |
| | : | |
| Respondents. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              March 12, 2021

## I.   INTRODUCTION

Presently before the Court is Petitioner Bin Wang's Amended
Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.
U.S. Magistrate Judge Linda K. Caracappa issued a Report and
Recommendation ("R&R") recommending that the Court deny the
petition. Wang objects.

For the reasons set forth below, the Court will overrule
all but one of Wang's objections. With the exception of Section
III.A.5 of the R&R,[1] the Court will adopt the R&R, as
supplemented herein, and will dismiss Wang's habeas petition. No
certificate of appealability will issue.

---

[1]    The Court declines to reach the issue of prejudice with respect to
Claim #1 and therefore will not adopt the portion of the R&R addressing that
issue. See infra Section III.A.2.b.

## II.   BACKGROUND

The Pennsylvania Superior Court summarized this case's procedural history in the state courts as follows:

> On November 6, 2008, a jury convicted [Wang] of First-Degree Murder and Possession of an Instrument of Crime in connection with the May 11, 2007 shooting of [Wang's] wife, Xiangzhen Lin, also known as Sharon Lin ("Sharon"), inside the couple's Philadelphia home during a dispute. [Wang] provided a statement to police claiming that Sharon committed suicide by shooting herself in the head, and [Wang] testified in his own defense at trial. Following the jury's verdict, the trial court immediately sentenced [Wang] to life imprisonment.
>
> [Wang] filed a timely direct appeal challenging, inter alia, the sufficiency and weight of the evidence, and this Court affirmed [Wang's] Judgment of Sentence. Commonwealth v. Bin Wang, No. 903 EDA 2009 (Pa. Super. filed Feb. 10, 2011) (unpublished memorandum). On August 9, 2011, our Supreme Court denied allowance of appeal. Commonwealth v. Bin Wang, No. 162 EAL 2011 (Pa. filed Aug. 9, 2011).
>
> On September 7, 2011, [Wang] filed a pro se PCRA Petition, and the PCRA court appointed counsel. [Wang] eventually retained private counsel, who filed an Amended PCRA Petition on May 22, 2016. [Wang] attached an extensive affidavit from a new purported expert that supported [Wang's] suicide theory. On August 25, 2016, the Commonwealth filed a Motion to Dismiss.
>
> On September 20, 2016, the PCRA court filed a notice of its intent to dismiss [Wang's] PCRA Petition without a hearing pursuant to Pa.R.Crim.P. 907. On November 4, 2016, the PCRA court dismissed [Wang's] PCRA Petition. [Wang] filed a timely Notice of Appeal.

Commonwealth v. Wang, No. 3485 EDA 2016, 2018 WL 298982, at *1 (Pa. Super. Ct. Jan. 5, 2018) (footnotes omitted).

In January 2018, the Pennsylvania Superior Court affirmed the dismissal of Wang's Post Conviction Relief Act (PCRA)

petition. See id. at *4. Wang did not seek review with the Pennsylvania Supreme Court.

In January 2019, Wang filed a habeas corpus petition in this Court. In May 2019, he filed an amended petition asserting three claims. Judge Caracappa summarized the petition as follows:

> Claim #1: Trial counsel was ineffective for not expanding the scope of his forensic investigation by consulting with and retaining a forensic expert like Brent Turvey to conduct a holistic examination of all the physical evidence. Trial counsel's ineffectiveness prejudiced Mr. Wang because there's a reasonable probability the outcome of his trial would've been different because the physical evidence, as Mr. Turvey's 35-page affidavit makes clear, supported Mr. Wang's suicide narrative far more than the Commonwealth's homicide narrative. U.S. Const. admts. 5, 6, 8, 14.
>
> Claim #2: Trial counsel failed to present the testimony of Mr. Wang's three neighbors – Troy Davis, Timothy Flemings, and Rick Kern – each of whom would've corroborated salient aspects of Mr. Wang's statement and trial testimony, bolstering his defense that Sharon Lin committed suicide and creating reasonable doubt regarding the Commonwealth's homicide narrative. Trial counsel's ineffectiveness prejudiced Mr. Wang because there's a reasonable probability that had trial counsel presented Davis, Flemings, and Kern the outcome of his trial would've been different. U.S. Const. admts. 5, 6, 8, 14.
>
> Claim [#6, relabeled Claim #3 for clarity]: The cumulative impact of trial counsel's objectively unreasonable decisions not to conduct a complete forensic investigation and not to subpoena and present Troy Davis, Timothy Flemings, and Rick Kern undermines confidence in the jury's first-degree murder conviction entitling Mr. Wang to a new trial. U.S. Const. admts. 5, 6, 8, 14.

See Amended Habeas Petition at 55, 115, 119.
Respondents' response of November 22, 2019, and
petitioner's seventy-nine page reply of April 10,
2020, only referred to those three claims. See
Response to Habeas Pet.; see Pet. Reply to Response.

Although petitioner included four additional claims in
his initial habeas petition, petitioner abandoned
those claims in his amended petition and thereafter. .
. . Therefore, we have only considered and reviewed
the claims raised in petitioner's amended petition for
habeas corpus relief.

R&R 2-3, ECF No. 33 (footnote omitted).

Judge Caracappa concluded that Wang's three claims lacked

merit. She therefore recommended dismissing the petition.

Wang now brings twenty-two objections to the R&R.[2] The Court

has considered the objections separately but, for the sake of

clarity, consolidates the objections in this memorandum and

addresses them as they pertain to each of Wang's three claims.

The Court reviews de novo the portions of the R&R to which Wang

objects. See 28 U.S.C. § 636(b)(1).


**III. ANALYSIS**

**A.   Claim #1**

Nearly all of Wang's objections pertain to Claim #1, which

argues that trial counsel was ineffective for failing to execute

a reasonable forensic investigation to counter the prosecution's

---

[2]      While Wang's objections are numbered "one" through "twenty-three,"
there is no eighth objection. For the sake of clarity, the Court has
preserved Wang's numbering scheme.

homicide narrative. The Court begins its analysis by describing
that claim in additional detail.

      1.   <u>Background</u>

     Trial counsel retained Dr. Paul Hoyer, a forensic
pathologist, to examine autopsy photographs of Sharon's entrance
wound to determine if it was a contact wound, which trial
counsel believed would support Wang's suicide narrative. Trial
counsel "didn't ask Dr. Hoyer to examine the scene photographs
and other physical evidence to determine whether the scene
characteristics, the scene dimensions, and other remaining items
of physical evidence" supported the suicide narrative. <u>See</u>
Pet'r's Objs. to R&R 23-24, ECF No. 37.

     Hoyer analyzed the autopsy photographs and informed trial
counsel that, while suicide was possible, he could not rule out
homicide. After reviewing Hoyer's analysis, trial counsel wrote
to Wang, stating, "Unfortunately, the findings are not as strong
as I had hoped. In fact, the conclusions will make the suicide
argument a very difficult one for the jury to understand." <u>Id.</u>
at 25. Trial counsel then had "a very long conversation" with
Hoyer. <u>Id.</u> Counsel subsequently wrote to Wang again, stating,
"[L]et me make this perfectly clear that Dr. Hoyer is not saying
that Sharon's death was absolutely, positively a suicide. . . .
It is your testimony that will persuade the jury that this was a
suicide." <u>Id.</u> Wang emphasizes that trial counsel reached this

determination without "consult[ing] with another forensic expert" or "examin[ing] the scene characteristics, scene dimensions, and physical evidence himself." Id.

Trial counsel also informed Wang that if he wanted "a second opinion and the possibility of a second autopsy (if the body is available) you will need to provide an advance budget of several thousand dollars." Id. at 26. Wang sent trial counsel an additional $3,000 to hire another forensic expert to examine the remaining physical evidence. In response, trial counsel wrote to Wang and said, "I'm not going to hire a second doctor until we have wrapped up Dr. Hoyer as a witness." Id.

Wang now challenges trial counsel's "decision to abandon—and not expand—his forensic investigation once Dr. Hoyer told him homicide and suicide were equally plausible based on the entrance wound's characteristics." Id. at 28. He argues that "[o]nce trial counsel knew Dr. Hoyer's entrance wound testimony made suicide and homicide equally plausible, clearly-established Strickland case law mandated that trial counsel expand the scope of his forensic investigation to determine if there were other items of physical evidence or facts about the scene" that supported the suicide narrative and raised reasonable doubts about the prosecution's homicide narratives. Id. at 27.

In support of this argument, Wang points to an affidavit by Brent Turvey, "a reconstruction expert whose expertise is in

6

examining the entire scene and all the physical evidence." Id. at 13. Turvey's affidavit states that "the physical evidence cannot definitively establish, with absolute certainty, whether [Sharon]'s death was the result of a suicide or a homicide" but that, between the two, the death was "more suggestive of a suicide." R&R 9, ECF No. 33.

The PCRA court dismissed Claim #1. The Pennsylvania Superior Court affirmed that dismissal on the basis of the PCRA court's reasoning, which stated:

> [Wang] first complains that trial counsel was ineffective for not expanding the scope of his forensic investigation by consulting with and retaining a crime scene expert or reconstructionist to conduct a holistic examination of all the physical evidence at the scene. A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued. Commonwealth v. Davido, 106 A.3d 611, 629 (2014). In [Wang's] case, trial counsel's strategy was to show that the decedent's gunshot wound was self-inflicted. Trial counsel engaged an expert, pathologist Dr. Paul Hoyer, who testified that, based upon his review of the autopsy report, the photographs, the discovery and digital images of the gun, it was his expert opinion that it was possible that Sharon Lin committed suicide; the weapon would be upside down, held in either hand and fired with the thumb of the other hand. Dr. Hoyer further testified that, for a suicidal gunshot wound of the head, this was the most common way of holding the weapon. It was his opinion that the evidence showed only that the wound was not a contact wound, not that the gun muzzle was three feet away when it was fired as Dr. McDonald opined. (N.T. 11/05/08 at 56-57, 71). When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's

decision had any basis reasonably designed to effectuate his client's interest. <u>Commonwealth v. Eichinger</u>, 108 A.3d 821, 848 (2014) citing <u>Commonwealth v. Williams</u>, 899 A.2d 1060, 1063-64 (2006). The record establishes that the strategy chosen by trial counsel had a reasonable basis designed to effectuate [Wang's] interests, namely that Sharon Lin's death was a suicide. Moreover, [Wang] has failed to demonstrate that the suggested alternative strategy identified by his hindsight approach (presenting an expert who would refute Dr. McDonald's opinion that the shot was fired from 2-3 feet away, and Robert Stott's opinion that [Wang] fired the shot while standing to the left of the bed), offered a reasonable probability of a different outcome at trial. Accordingly, this claim fails.

<u>Id.</u> at 9-10 (first citing PCRA Ct. Op., Mar. 20, 2017, at 9-10; and then citing <u>Wang</u>, 2018 WL 298982, at *3).

On habeas review, Judge Caracappa was "unable to conclude that the Superior Court was unreasonable in upholding the PCRA court's finding that [Claim #1] was not meritorious." <u>Id.</u> at 20.

## 2. <u>Analysis</u>

Judge Caracappa set forth the governing legal framework in detail. <u>See id.</u> at 4-7. In sum, a federal court on habeas review must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established federal law or (2) based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). A state court decision is "contrary to" established precedent when the state court "applies a rule that contradicts the governing law set forth in

[Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a different result from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable" application of established precedent when "the state court identifies the correct governing legal principle but unreasonably applies it to the facts of the particular state prisoner's case" or "either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

To establish an ineffective assistance of counsel claim, a petitioner must first prove that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Second, the petitioner must show prejudice—i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

On federal habeas review of an ineffective assistance of counsel claim, "the pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's

performance fell below Strickland's standard." Harrington v.
Richter, 562 U.S. 86, 101 (2011). "A state court's determination
that a claim lacks merit precludes federal habeas relief so long
as 'fairminded jurists could disagree' on the correctness of the
state court's decision." Id. (quoting Yarborough v. Alvarado,
541 U.S. 652, 664 (2004)). "The standards created by Strickland
and § 2254(d) are both 'highly deferential,' and when the two
apply in tandem, review is 'doubly' so." Id. at 105 (citations
omitted).

> a.   Prong 1: Reasonableness of Counsel's
>      Representation[3]

To show that counsel's representation fell below an
objective standard of reasonableness, the challenger must
demonstrate that "counsel made errors so serious that counsel
was not functioning as the 'counsel' guaranteed the defendant by
the Sixth Amendment." Id. at 104.

Here, the Superior Court considered that trial counsel
engaged a forensic pathologist whose expert testimony provided
support for trial counsel's strategy (i.e., to show that
Sharon's gunshot wound was self-inflicted), and the court
concluded that this strategy "had a reasonable basis designed to
effectuate [Wang's] interests." Wang, 2018 WL 298982, at *3.

---

[3]   See Pet'r's Objs. to R&R, Objs. 1-3, 5-7, 9-11, 13-15, 21, ECF No. 37.

Wang now argues that neither the state courts nor Judge Caracappa understood the crux of Claim #1. He emphasizes that he does not challenge trial counsel's decision not to retain Turvey (or another expert with Turvey's credentials); instead, he challenges "trial counsel's decision to abandon—and not expand— his forensic investigation once Dr. Hoyer told him homicide and suicide were equally plausible." See Pet'r's Objs. to R&R 28, ECF No. 37.

Assuming that this is so,[4] Wang does not contend that Hoyer advised trial counsel that he was not qualified to testify in support of the defense's theory of the case, recommended that trial counsel retain an additional expert or otherwise expand the forensic investigation, or highlighted potential flaws in the prosecution's forensic evidence that trial counsel failed to pursue. This reality distinguishes the instant action from the failure-to-investigate cases involving forensic evidence on which Wang relies. See, e.g., Showers v. Beard, 635 F.3d 625, 627 (3d Cir. 2011) (affirming grant of habeas relief where an expert advised defense counsel that "the central question was whether the morphine was taken voluntarily or surreptitiously, but [the expert] did not have the necessary scientific background to testify regarding the [drug's] properties" and the

---

[4]    It appears that Judge Caracappa addressed Wang's failure-to-investigate claim at length. See R&R 8-16, ECF No. 33.

expert "advised [trial counsel] to secure a qualified expert" to address the issue and "provided him with contact information for three potential witnesses"); Siehl v. Grace, 561 F.3d 189 (3d Cir. 2009) (remanding for evidentiary hearing to evaluate counsel's performance where "trial counsel cross-examined the Commonwealth's forensic evidence witnesses . . . without the advice of a forensic expert, and the defense countered with no forensic evidence of its own" and trial counsel "failed to seek additional forensic assistance" even after an expert's "preliminary analysis" alerted counsel to the fact that the prosecution's fingerprint aging evidence "was probably unsound"). Unlike trial counsel in those cases, counsel for Wang retained a qualified expert who testified consistent with Wang's theory of the case, and at no time did Hoyer advise trial counsel of the need to "expand" his forensic investigation.

Applying, as it must, the "doubly deferential" standard, this Court cannot conclude that the Superior Court's determination that trial counsel did not fail to function as the "counsel" guaranteed by the Sixth Amendment was unreasonable. See Harrington, 562 U.S. at 105. Therefore, Wang's objections to the first prong of the Strickland analysis with respect to Claim #1 will be overruled.

b.    Prong 2: Prejudice[5]

Because Wang has failed to satisfy the first prong of the

Strickland analysis, the Court need not reach the issue of

prejudice. See Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)

("[A] defendant must show both deficient performance by counsel

and prejudice in order to prove that he has received ineffective

assistance of counsel."). The Court will refrain from deciding

this issue and therefore will not adopt the R&R's analysis of

this prong. See R&R Section III.A.5, ECF No. 33.

Accordingly, Wang's objections to the second prong of the

Strickland analysis with respect to Claim #1 will be dismissed

as moot.

B.    **Claim #2**[6]

Next, Wang claims trial counsel was ineffective for failing

to present the testimony of three of his neighbors. As set forth

in the R&R, the state court reasonably concluded that Wang

failed to demonstrate that he was prejudiced by the absence of

the witnesses' testimony because the testimony would have been

cumulative. See id. at 21-23. Further, Wang has failed to

demonstrate that trial counsel's decision not to call the

witnesses was unreasonable.[7] See id. at 23-24. Therefore, the

---

[5]    See Pet'r's Objs. to R&R, Objs. 4, 16-21, ECF No. 37.
[6]    See Pet'r's Objs. to R&R, Obj. 22, ECF No. 37.
[7]    As to at least one witness, as Judge Caracappa concluded, counsel
clearly had a rational basis to conclude that calling the witness would do
more harm than good. See R&R 23-24, ECF No. 33.

Court adopts the R&R's analysis of Claim #2 and will overrule Wang's objection pertaining to this claim.

### C.   __Claim #3__[8]

Finally, Wang argues the cumulative effect of the alleged errors denied him a fair trial. Because Claims #1 and #2, viewed separately or cumulatively, lack arguable merit, the Court will adopt the R&R's analysis and will overrule Wang's objection pertaining to this claim. See id. at 24-25.

### D.   __Remaining Objection__[9]

The Court will sustain Wang's objection to the R&R's conclusion that Hoyer was more qualified than Turvey. While Wang does not dispute that Hoyer is a more qualified forensic pathologist than Turvey, who is a reconstruction expert, Hoyer is not necessarily more qualified than Turvey to testify about evidence unrelated to forensic pathology. Because the R&R does not expressly draw this distinction, the objection will be sustained. This ruling does not alter the Court's preceding analysis.

### E.   __Certificate of Appealability__

When denying a § 2254 petition, a district court must also determine whether to issue a certificate of appealability. See 3d Cir. L.A.R. 22.2 (2011). A district court may issue a

---

[8]     See Pet'r's Objs. to R&R, Obj. 23, ECF No. 37.
[9]     See Pet'r's Objs. to R&R, Obj. 12, ECF No. 37.

certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Particularly in light of the "doubly deferential" standard of review in this case, the Court concludes that Wang has not made such a showing. See Harrington, 562 U.S. at 105. Therefore, the Court declines to issue a certificate of appealability.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will sustain in part and overrule in part Wang's objections; adopt the supplemented R&R, except for Section III.A.5; and dismiss the habeas petition. No certificate of appealability will issue.